BRIGHT CO. *v.* UNITED STATES (No. 2729)[1]

HERRING, SMOKED, BONED, SALTED, CANNED, AND COOKED.

In *Seeman Bros. et al.* v. *United States*, 12 Ct. Cust. Appls. 421, the provision of paragraph 718, Tariff Act of 1922, for "smoked herring, skinned or boned" was limited to that which was not otherwise prepared or preserved. Herring which had been boned, brined, smoked, dried, canned, and cooked, labeled "kippered" and known in the trade as "kippered," were classified by the collector under paragraph 720 as "fish  *  *  *  pickled, salted, smoked, kippered, or otherwise prepared or preserved," and the overruling of a protest claiming under the provision *supra* of paragraph 718 is affirmed.

United States Court of Customs Appeals, May 29, 1926

APPEAL from Board of United States General Appraisers, Abstract 50844

[Affirmed.]

*David D. Stansbury* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.

[Oral argument May 14, 1926, by Mr. Stansbury and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Paragraphs 720 and 718 of the Tariff Act of 1922 read as follows:

PAR. 720. Fish (except shellfish), by whatever name known, packed in oil or in oil and other substances, 30 per centum ad valorem; *all fish* (except shellfish), *pickled, salted, smoked, kippered, or otherwise prepared or preserved* (except in oil or in oil and other substances), in immediate containers weighing with their contents not more than fifteen pounds each, 25 per centum ad valorem; in bulk or in immediate containers weighing with their contents more than fifteen pounds each, 1¼ cents per pound net weight. (Italics ours.)

PAR. 718. Salmon, pickled, salted, smoked, kippered, or otherwise prepared or preserved, 25 per centum ad valorem; finnan haddie, 25 per centum ad valorem; dried fish, salted or unsalted, 1¼ cents per pound; *smoked herring, skinned or boned, 2½ cents per pound;* all other fish, skinned or boned, in bulk, or in immediate containers weighing with their contents more than fifteen pounds each, 2½ cents per pound net weight. (Italics ours.)

---

[1] T. D. 41704.

The merchandise involved herein was assessed for duty, by the collector, at 25 per centum ad valorem under paragraph 720, *supra*, as "kippered herring imported in tins weighing less than 15 pounds each."

The importer protested the assessment, claiming it to be dutiable as "smoked herring, skinned or boned, 2½ cents per pound," under paragraph 718, *supra.* The Board of General Appraisers overruled the protest, from which action the importer appeals to this court.

It is stipulated between the parties that the merchandise involved in this case is in all material respects similar to the kippered herring involved in *Seeman Bros. et al.* v. *United States*, 12 Ct. Cust. Appls. 421.

The exhibits before us consist of two tin boxes or containers, net weight 3¼ ounces and 8 ounces, respectively. The smaller is labeled: "King Oscar Brand, Norwegian Boneless, Kippered Snacks, Fillet of Kippered Herrings." The larger one is labeled on both sides and on top as "King Oscar Selected Norwegian Boneless Kippered Herrings."

The testimony in the record discloses that the merchandise is imported in cases of 100 tins and that in the trade the merchandise would be known as kippered herring; that the merchandise has for 15 years been designated as kippered herring; and that the fish in the tins belong to the family of fish known as "Norwegian spring herring;" that the fish, as a rule, are caught a few miles distant from Stavanger, and arrive at the cannery early in the morning. As soon as the cases containing the fish are discharged into the cannery the herrings are removed from the cases and put into the machine which cuts off the heads and tails, and splits, bones, and guts them in one operation. After they come out of the machine, they are washed in fresh water and then put in brine, where they remain about 20 minutes. Then they are put on the steel rods and taken to the smoking rooms where they remain for approximately two hours. When taken out of the smoke ovens, they are dried for about three hours, and are then put into the tins which are hermetically sealed. The sealed tins and contents are then boiled for about 55 minutes.

The importer's contention may be summed up into two propositions, (1) an *eo nomine* designation must be preferred to terms of general description, and to enumerations which are broader in scope and less specific; (2) smoked herrings, boned, and subjected to no further process and having nothing added thereto, are dutiable under paragraph 718.

*Seeman Bros. et al.* v. *United States, supra*, is relied upon as supporting the last proposition. The importer, in its brief, relies solely upon the proposition that "nothing was done to the fish concerned

in this importation other than smoking and boning. They were 'not otherwise prepared.' Nothing was done to them. No sauces were added nor any other condiments which might bring them within the meaning 'or otherwise prepared.'''

They were invoiced as "Boneless Kippered Herrings" and were entered as "Fish in tins NOR KR." Importer's brief nowhere contains the definite statement that the merchandise was not kippered. It does contain the statement that the fish are not prepared in any manner by the addition of pepper, or other spices, to make them in any way different from smoked, boned herring. Before this court, however, counsel for importer, evidently relying upon certain dictionary definitions of the word "kipper," urged that they were not kippered.

This court is not primarily concerned with the enforcement of the pure food laws, or laws respecting incorrect labels, or improper commercial practices, unless they are involved in the determination of questions properly before this court. However, the attitude of the importer concerning its duty to the Government, and to the consumer, who purchases its importation, is so unusual as to make comment thereon unavoidable. The importer, in this case, has been engaged in importing this character of merchandise for 27 years. The record discloses that the Chr. Bjelland & Co. is a large concern in Norway, having 18 factories. They started packing in 1914 and since that time have always described their product as "kippered herring." For 15 years this merchandise has been designated as "kippered herring." The tins are labeled in large gilt letters "Selected Norwegian Boneless Kippered Herring." They were invoiced as kippered herrings. Notwithstanding these facts the importer has entered them as fish in tins NOR KR, and in order that it may have them classified as smoked herring, skinned and boned, at 2½ cents per pound, rather than as "fish, salted, smoked, kippered, or otherwise prepared," at 25 per centum ad valorem, it is willing to take the position in this court that they are in fact not kippered.

In *Seeman Bros.*, *supra*, this court quoted four dictionary definitions of the word "kipper." In two of the definitions rubbing with salt and pepper was a part of the process of kippering. In the other two it was not. Evidently it was the importer's understanding that it was the belief of this court that to be kippered herring it was necessary for them to have been treated with the condiments referred to, and that, if they showed that no such condiments had been used, they could not be regarded as kippered, and that this would result in the classification of the merchandise at the lower rate of duty. In the *Seeman* case, however, the collector, as here, assessed the duty for goods under paragraph 720 as "fish, pickled, salted, smoked,

kippered, or otherwise prepared or preserved." The board sustained the collector's classification. The court said:

Witnesses for the importers testify that the merchandise has been smoked and boned, but there is no evidence to the effect that it has not been otherwise prepared, so as to give it the character of "kippered" herring or "kippered" fish.

The burden of proof was on the importers, not only to establish that the collector's classification of the merchandise was wrong, but that the classification contended for by them was right. Benjamin Iron & Steel Co. *v.* United States (2 Ct. Cust. Appls. 159; T. D. 31677).

From the dictionary definitions of the word "kipper" it is apparent that in such process of preparation the fish may or may not be smoked. The fact that they are smoked does not establish that they do not come within the class of "kippered fish."

\* \* \* \* \* \* \*

After careful consideration of the two paragraphs we are of the opinion that Congress intended that "smoked herring, skinned or boned," should be included within the provisions of paragraph 718, supra, but that "smoked herring, skinned or boned," and further or otherwise prepared or preserved should be excluded from that paragraph.

\* \* \* \* \* \* \*

In the absence of any evidence to challenge the correctness of the collector's classification of such merchandise under paragraph 720, supra, we are unable to say that such classification was wrong.

In that case this court limited the merchandise which would come under "smoked herring, skinned or boned," to that which was not otherwise prepared or preserved.

It is admitted that the merchandise in this case was not only smoked and boned, but was immersed in salt for 20 minutes and was boiled for 55 minutes, and sealed hermetically. The exhibits have the taste and appearance of being well salted and thoroughly cooked. The collector found that they had been pickled, or salted, or smoked, or kippered, or otherwise prepared, or preserved.

We do not think the evidence in the record overcomes the presumption of the correctness of the collector's finding. The judgment of the Board of General Appraisers (now the United States Customs Court) is *affirmed*.

BARBER, J., concurs in conclusion.